# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | ) |
| | ) |
| **David William Bigelow and** | ) Case No. 25-60633 |
| **Marcia Joan Bigelow,** | ) |
| | ) |
| Debtors. | ) Chapter 7 |

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTION

The present dispute requires the court to determine whether an artist-debtor's artwork and related items are "household goods" under Missouri and bankruptcy exemption law. Chapter 7 debtors David and Marcia Bigelow claim a household goods exemption in David's artwork and related items. Chapter 7 trustee Bruce Strauss objects to the exemption, arguing, among other things, that the artwork and items are not household goods. Because the court agrees with the trustee, and for the reasons explained below, the court sustains the trustee's objection.

## BURDEN OF PROOF

"A claimed exemption is presumptively valid." *Danduran v. Kaler (In re Danduran)*, 657 F.3d 749, 754 (8th Cir. 2011) (citing *Stephens v. Hedback (In re Stephens)*, 425 B.R. 529, 533 (B.A.P. 8th Cir. 2010)). The objecting party bears the initial burden of proving the exemption is improper. Fed. R. Bankr. P. 4003(c). If the objecting party produces evidence in support of the objection, the burden of production shifts to the debtor, who must prove the exemption is proper. *In re Danduran*, 657 F.3d at 754. However, "[t]he burden of persuasion remains with the [objecting party]." *Id.*

## BACKGROUND

The parties do not dispute the relevant facts, which the court derives from the Bigelows' schedules, the parties' pleadings and attachments, and counsels' agreed recitations of the facts at the court's January 14, 2026, hearing on this matter. The court takes judicial notice of all filings in this case, including the property descriptions in the Bigelows' schedules A/B and C, and the descriptions of David's earnings in schedule I.

Chapter 7 debtor David Bigelow is an artist and art professor who, for the last fifty years, has had a hobby of creating and selling original etchings and prints. He and his wife, Marcia Bigelow, filed a joint chapter 7 voluntary petition and related bankruptcy schedules in September 2025. In their schedules, the Bigelows disclosed ownership interests in several items of property related to David's art sales, including a "small canopy, carpet pieces, portable booth, 2 wooden chairs, [and] original etchings." Schedule A/B 2, Dkt. No. 1, Sept. 29, 2025.

The Bigelows categorized these etchings and related items as "Household goods and furnishings" and scheduled them in an entry that also contained goods, appliances, and furniture unrelated to David's art. Though the Bigelows keep and use the household furnishings and other items unrelated to David's art (the "washer, dryer, refrigerator-small, . . . 2 double bed sets, couch, 2 chairs, dining room table, small kitchen appliances and [utensils], [and] hutch,") in their residence, they currently store the etchings and art-related items in a storage facility. *Id*. The items related to David's art sales are not on display or used on a regular basis in the Bigelows' home.

2

The Bigelows collectively valued all of their purported "household goods and furnishings" (including the etchings and related items) at $3,725 and claimed the full $3,725 value exempt under Mo. Rev. Stat. § 513.430.1(1). The Bigelows premised this valuation in part on a pre-bankruptcy appraisal concluding David's artwork (including "500+ mostly original etchings") and supplies (the "small canopy, carpet pieces, 10'x10' portable booth, [and] 2 wooden director type chairs" that David used for art fairs) would yield $2,500 at auction. Ex. A to Debtors' Resp. Trustee's Obj. Debtors' Claim Exemptions Personal Property 1, Dkt. No. 24, Dec. 11, 2025.

Chapter 7 trustee Bruce Strauss objected to the Bigelows' exemption in the artwork and supplies on two grounds. First, because David testified at the § 341 meeting that he sold his etchings at art fairs for between $325 and $525 per piece, the trustee calculates that "their [aggregate] value greatly exceeds the claimed exemption of $3,725." Trustee's Obj. Exemptions 1, Dkt. No. 20, Nov. 20, 2025. And second, the art and related items "are not properly categorized as household goods or furnishing[s]." *Id*.

In response, the Bigelows argue their valuation is correct because it is based on an appraisal. And though David historically sold his etchings at art fairs for $325 to $525 per piece, "due to his health [David] is uncertain if he will be able to [sell his artwork at art fairs] in the future." Debtors' Resp. Trustee's Obj. Debtors' Claim Exemptions Personal Property 1. Consequently, the trustee would earn far less liquidating the artwork in chapter 7 than David historically received marketing and selling it in person at art fairs. As to the trustee's argument that the artwork and

3

related items are not household goods, the Bigelows respond that the artwork is now just a personal collection that David has accumulated for over fifty years and can no longer sell at art fairs. David, however, may use the etchings as examples in his art classes.

Having outlined the relevant background, the court turns to the merits of the trustee's objection to the Bigelows' exemption.

## ANALYSIS

Section 513.430 of the Missouri Revised Statues governs the present dispute.[1] It provides an exemption for "household goods . . . held primarily for personal, family or household use." Mo. Rev. Stat. § 513.430.1(1). Section 513.430, however, does not further define the term household goods.[2] *Id.* Accordingly, "[b]ankruptcy courts decide what constitutes household goods on a case-by-case basis." *In re Gray*, 87 B.R. 591, 592 (Bankr. W.D. Mo. 1988) (citing *Lanzoni v. ITT Fin. Servs. (In re Lanzoni)*, 67 B.R. 58, 60 (Bankr. W.D. Mo. 1986)) (construing household goods in lien avoidance context).

Courts "liberally construe exemption statutes in favor of debtors." *Hardy v. Fink (In re Hardy)*, 787 F.3d 1189, 1192 (8th Cir. 2015). But a court may not

---

[1] Missouri has opted out of the federal exemptions. Mo. Rev. Sat. § 513.427.

[2] Section 522(f), which authorizes avoidance of a nonpossessory, nonpurchase-money security interest in household goods, appears at first blush to define the term household goods to include, by negative inference, self-made artwork. See 11 U.S.C. § 522(f)(4)(B)(i) (stating the term household goods "does not include . . . works of art (unless by or of the debtor . . .)." Section 522(f), however, does not govern the court's analysis of Missouri exemption law in this case. Moreover, even in the lien avoidance context, courts agree that an item's primary use determines whether the item is a household good. *See, e.g., In re Miller*, 65 B.R. 263, 265–66 (Bankr. W.D. Mo. 1986) (using primary use analysis to determine whether an item is a household good for purposes of lien avoidance). As the court explains below, primary use is also determinative here. Thus, the court's exemption analysis does not conflict with the relevant lien avoidance authority.

4

substantially depart from the language of the statute or extend the scope of the exemption beyond what the legislature intended to provide. *See In re Shelby*, 232 B.R. 746, 765 (Bankr. W.D. Mo. 1999) (quoting *In re Goertz*, 202 B.R. 614, 618 (Bankr. W.D. Mo. 1996)).

In this instance, the language of the statute is clear. Missouri's household goods exemption explicitly confines the court's inquiry to the goods' primary use. *See* Mo. Rev. Stat. § 513.430.1(1) (exempting "household goods . . . held primarily for personal, family or household use."). Accordingly, an item's primary use is determinative, and even a secondary household use does not override the court's consideration of the item's primary use. *See First Bank of Catoosa v. Reid (In re Reid)*, 757 F.2d 230, 235–36 (10th Cir. 1985) (upholding determination that religious paintings' most important use as business collateral defeated a household goods exemption despite use for aesthetic purposes). Similarly, debtor's mere categorization of an item as a household good does not overcome a contrary primary use. *See In re Thompson*, 750 F.2d 628, 631 (8th Cir. 1984) (concluding, in the lien avoidance context, that mere categorization of an item as a household good cannot overcome the fact that an item has primarily been used for commercial purposes). Courts may analyze an item's historical use when determining primary use. *In re Reid*, 757 F.2d at 235–36 (analyzing debtors' commercial use of paintings from date of acquisition).

An item is primarily used for household purposes when the item is convenient or useful to a debtor's reasonable existence. *In re Gentry,* 519 B.R. 531, 533–34

5

(Bankr. W.D. Mo. 2014). In determining whether an item is convenient or useful to a debtor's reasonable existence, the court considers whether the item is essential to household functioning and whether it is ordinarily used in or found within a residence. *Id.* (citing *In re Ray*, 83 B.R. 670, 673 (Bankr. E.D. Mo. 1988)); *see also In re Miller*, 65 B.R. 263, 265–66 (Bankr. W.D. Mo. 1986) (concluding, in the lien avoidance context, that tools and lawn equipment were household goods due to essential purpose in the maintenance and upkeep of the home).

If a debtor claims the household goods exemption in a collection of items, the court must analyze the individual items in the collection rather than the collection as a whole. *In re Gentry,* 519 B.R. at 534 (reviewing the debtors' intended use for specific guns within a collection). The debtor must intend to use the items in the collection consistent with their household utility. *Id.* (implying a gun collection could be useful, convenient to a reasonable existence, or necessary if the collection was intended for hunting or self-protection purposes); *see also In re Karaus*, 276 B.R. 227, 231–33 (Bankr. D. Neb. 2002) (exempting, under Nebraska law, two guns used to protect the home but denying the exemption for remaining gun collection). Thus, when a debtor uses a small number of artworks in a collection for display or other household purposes, the exemption may be appropriate in the displayed items but not the entire collection. *See In re Gentry,* 519 B.R. at 534 (concluding that firearms intended for hunting or self-protection were exempt, but an antique gun collection was not exempt).

6

Here, the art-related items do not fall within the scope of the household goods exemption. The parties agree that the 500+ etchings and other items related to David's art sales, as a collection, are stored in a climate-controlled storage facility. There is nothing in the record to support the Bigelows' assertion that they hold the art-related property primarily for personal, family, or household use; that the property is necessary to the functioning of their household; or that maintaining the art-related property is convenient or useful to their reasonable existence. And though the household goods exemption might have been available to shield a limited number of items for personal use or enjoyment within the Bigelows' home, such as a small number of artworks displayed for aesthetic purposes, nothing suggests those facts here. Likewise, nothing suggests that the Bigelows ever held these items for personal, family, or household use. The Bigelows' mere characterization of the items as household goods is insufficient to negate the lack of present or past household use. Consequently, there is nothing in the record to reflect the Bigelows' entitlement to the household goods exemption.

In summary, because maintaining the artwork and related items is not convenient, useful, necessary, or essential to the functioning or maintenance of their household, the Bigelows may not claim the household goods exemption.

## CONCLUSION

For the reasons explained above, the court SUSTAINS the trustee's objection to the Bigelows' household goods exemption in the "small canopy, carpet pieces,

7

portable booth, 2 wooden chairs, [and] original etchings" without prejudice.

    IT IS SO ORDERED.

Dated: 3/4/2026                  /s/ Brian T. Fenimore
                                         United States Bankruptcy Judge